***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
Accordingly, the Full Commission modifies and affirms the Opinion and Award of Deputy Commissioner Dollar, with modifications.
 *********** STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. James C. Greene Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained a compensable injury by accident on 14 October 2000.
5. Defendants paid total disability compensation pursuant to N.C. Gen. Stat. § 97-18(b) from 31 October 2000 to 26 January 2001.
6. The parties stipulate that the entire contents of the Industrial Commission file be entered into evidence, specifically including, but not limited to, all reports and all completed Industrial Commission forms, without further identification or proof.
7. Defendants paid the entire mediator's fee.
8. The issues for determination are:
a. What is plaintiff's correct average weekly wage?
b. Is plaintiff entitled to any additional disability compensation?
 c. Did defendants violate the Workers' Compensation Act and Commission Rules by unilaterally terminating plaintiff's total disability compensation being paid under N.C. Gen. Stat. § 97-18(b)?
 d. Is plaintiff entitled to a payment of a ten percent penalty for all compensation owed from the date of defendants' unilateral termination of benefits?
 e. Did defendants unreasonably deny plaintiff's claim for additional compensation following the unilateral termination of benefits?
 f. Whether plaintiff's claim for additional compensation should be barred under the doctrine of laches?
 g. Whether plaintiff's claim that defendants have unreasonably denied his claim for additional compensation is frivolous?
 h. Are defendants entitled to a credit of $187.50 against any compensation plaintiff is awarded due to defendants' payment of the mediator fee?
9. The parties stipulated the following documents into evidence:
a. Exhibit 1 — Medical Records, 44 pages;
b. Exhibit 2 — I.C. Forms, six pages;
c. Exhibit 3 — NCGA correspondence, two pages;
d. Exhibit 4 — Plaintiff's Answers to Interrogatories, eight pages;
e. Exhibit 5 — Defendants' Answers to Interrogatories, eight pages;
10. The parties stipulated that plaintiff's applications in Plaintiff's Exhibit 1 reflect that he needs a visa to work in the United States.
 *********** ADDITIONAL STIPULATIONS
1. The vocational report by George R. Lentz is authenticated and admissible into evidence and is identified as a separate stipulated exhibit.
2. Plaintiff was not provided with the Lentz report prior to the hearing.
3. Plaintiff was never asked to apply for any of the jobs identified by Mr. Lentz prior to the hearing.
4. Mr. Lentz has not met with plaintiff nor provided any vocational rehabilitation services to plaintiff prior to preparing his report.
5. Mr. Lentz does not know whether any of the employers identified in his report would hire plaintiff.
6. Plaintiff did not work between 27 January 2001 and 30 April 2001.
7. From 30 April 2001 to the present, plaintiff has been earning $62.51 per week with his current employer. This is based upon plaintiff's hearing testimony and discovery responses indicating that he earned approximately 100 pesos per day and the average exchange rate from 20 April 2001 to the present.
8. The 13 December 2002 medical note of Dr. Martin Vice is authenticated and admissible into evidence and is to be identified as Stipulated Exhibit 14.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences there from, the undersigned makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a native of Mexico, with a third grade education. Plaintiff resides at Rancho Hacienda Vieja, Tierra Nueva, San Luis Potosi. He does not read or speak English.
2. In 2000, plaintiff obtained a visa to work in the United States through the H2A Program. He was employed by Jeffrey Smith as a farm worker.
3. Smith Farm is a year-round farming operation where crops are planted and harvested. Normally, the farm has two or three year-round employees.
4. Following the compensable injury, plaintiff was initially treated at Hoots Memorial Hospital in Yadkinville and by Dr. Martin Vice for the displaced fracture of the proximal third of the proximal phalanx of the fifth finger.
5. Defendants paid temporary total disability benefits to plaintiff from 30 October 2000 through 25 January 2001 based on an average weekly wage of $398.72.
6. Defendants unilaterally terminated plaintiff's temporary total disability benefits as of 25 January 2001.
7. On 26 January 2001, defendant-employer allowed plaintiff to return to work, raking leaves and cutting pumpkins. Plaintiff earned $31.41 for this work. This one-day assignment is insufficient to rebut the presumption of ongoing disability.
8. Defendants did not file either an I.C. Form 28T or an I.C. Form 24 prior to unilaterally terminating payment of temporary total disability benefits to plaintiff.
9. On 31 January 2001, Dr. Vice recommended therapy and exercises for plaintiff's left finger due to restricted motion. As plaintiff had indicated a desire to return to his home, Dr. Vice released plaintiff to go back to Mexico. However, he did not release plaintiff to return to work without restrictions. Oscar Orellana, a bilingual employee of the N.C. Growers' Association, accompanied plaintiff to his appointment and assisted plaintiff in arranging to return to his home.
10. Plaintiff did not work between 27 January 2001 and 29 April 2001.
11. Plaintiff was temporarily totally disabled from earning wages due to the compensable injury from 22 October 2000 to 25 January 2001 and again from 27 January 2001 until 29 April 2001.
12. Defendants authorized plaintiff to change his treating physician to Dr. Carlos Eduardo Paredes Aquilla of San Luis Potosi, Mexico. The doctor's office is eighty kilometers from his residence.
13. Dr. Aquilla found plaintiff unable to perform his pre-injury job. Plaintiff continued to have restrictions of bearing over ten kilograms and of making fine hand movements.
14. On or about 30 April 2001, Placido Don Juan hired plaintiff to perform modified duty work on his farm at the rate of $62.51 per week. Plaintiff had worked on a seasonal basis for him prior to the injury.
15. On 18 September 2002, Dr. Aquilla, a traumatology surgeon, orthopedic pediatrician and spinal chiropractor reviewed plaintiff's job description from the N.C. Grower's Association and opined plaintiff was unable to do the work.
16 On 12 December 2002, plaintiff returned to Dr. Vice. Plaintiff still has limitation of flexion at the PIP and DIP joints of the left fifth finger and the DIP joint of the left fourth finger. Dr. Vice recommends a functional capacity evaluation.
17. Plaintiff is willing to work with a vocational counselor to obtain a higher paying job.
18. Plaintiff has applied for work with various employers, including meeting with the N.C. Growers' Association. However, plaintiff was not offered any work.
19. Plaintiff would benefit from undergoing a functional capacity evaluation before permanent work restrictions may be established.
20. Defendants' unilateral termination of plaintiff's temporary total disability benefits constituted bad faith and stubborn, unfounded litigiousness.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. Pursuant to N.C. Gen. Stat. § 97-2(5), the third method of calculating average weekly wage is the fair and equitable way to the parties. Plaintiff's average weekly wage is $398.72, which yields a compensation rate of $265.83.
2. In addition to sums already paid pursuant to the I.C. Form 60, plaintiff is entitled to temporary total disability for the period from 27 January 2001 through 29 April 2001 at the rate of $265.83 per week. N.C. Gen. Stat. § 97-29. Plaintiff is entitled to have defendants pay a penalty of an additional ten per centum (10%), pursuant to N.C. Gen. Stat. § 97-18(g) for failure to timely pay benefits due.
3. Plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between the pre-injury and post-injury wage for the period from 30 April 2002 and continuing in accordance with the provisions of N.C. Gen. Stat. § 97-30. Plaintiff is entitled to have defendants pay a penalty of an additional ten per centum (10%), pursuant to N.C. Gen. Stat. § 97-18(g) for failure to timely pay benefits due.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as may be necessary to provide relief, effect a cure or lessen his period of disability. N.C. Gen. Stat. §§ 97-2(19); -25. This includes payment for a functional capacity evaluation, as well as any other treatment as may be necessary, including, but not limited to vocational rehabilitation.
5. The Plaintiff is entitled to an Independent Medical Evaluation at a place and with a physician of the defendant's choosing.
6. Plaintiff is entitled to have defendants pay his reasonable attorney's fees for bringing this claim as a sanction for their failure to comply with the statutory requirements in terminating indemnity payments and due to their bad faith in the handling of this claim, which arose from the same. N.C. Gen. Stat. § 97-88.1, Commission Rule 802.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $265.83 per week for the period from 27 January 2001 through 29 April 2001, plus a ten per centum penalty for failure to make timely payment of benefits. Said compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay temporary partial disability compensation at the rate of two-thirds of the difference between the pre-injury wage and the post-injury wage per week for the period from 30 April 2002, in accordance with the provisions of N.C. Gen. Stat. § 97-30. In addition, defendants shall pay a ten per centum penalty to all such benefits not timely paid, up through the date of this Opinion.
3. Defendants shall pay an amount equal to twenty-five percent of the compensation awarded to plaintiff in paragraphs 1 and 2 above is hereby approved to be paid directly to counsel. Defendants shall also be liable for an additional $2,000.00 to be paid directly to plaintiff's counsel as a sanction for failure to comply with the law in ceasing payment of benefits to plaintiff and due to their bad faith in handling this claim.
4. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act, including, but not limited to a functional capacity evaluation and vocational rehabilitation for the plaintiff to reassess and/or to re-train, and the plaintiff must present for an Independent Medical Evaluation at a place and with a physician of the defendant's choosing.
5. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
6. Defendants shall pay the costs.
This the ___ day of February 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
PTY/db